

**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: September 19, 2017.**

_____
**CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO. 17-51137-CAG |
| PAMELA HUTCHINGS, | § § § | CHAPTER 7 |
| Debtor. | § | |

### ORDER DENYING DEBTOR'S MOTION TO AVOID JUDICIAL LIEN OF CREDITOR (ECF NO. 5)

Before the Court is Debtor's Motion to Avoid Judicial Lien of Creditor (the "Motion") (ECF No. 5)[1]. New Leaf Homes, LLC ("New Leaf") filed Response to Debtor's Motion to Avoid Judicial Lien of Creditor (the "Response") (ECF No. 8). A hearing was held on the Motion and Response on July 18, 2017. Having considered the arguments presented by counsel and the applicable law, the Court finds that New Leaf is equitably subrogated to the position previously

---

[1] Unless otherwise noted, all references to "ECF" herein refer to documents filed in Bankruptcy Case 17-51137-cag.

held by the prior lienholder, HomeEq Services ("HomeEq") and, therefore, Debtor cannot avoid the judgment lien pursuant to 11 U.S.C. §§ 506(d) or 522(f) because New Leaf is entitled to step into the shoes previously filled by HomeEq under the doctrine of equitable subrogation. Therefore, the Motion should be denied, and New Leaf is equitably subrogated to the position previously held by HomeEq.

## BACKGROUND

This case involves New Leaf's judicial lien against Debtor's homestead. The parties have agreed to stipulated facts. (ECF No. 16). In April 2006, Debtor obtained a home equity loan from HomeEq secured by her homestead, 5931 Hidden Rose, San Antonio, Texas (the "Hidden Rose Property") (ECF No. 16). Sometime after, Debtor hired New Leaf to construct a new home for her (ECF No. 16). A dispute between the parties arose and resulted in arbitration, culminating in a settlement agreement in August, 2009 (ECF No. 16) (Exhibit 5). Under the settlement agreement, New Leaf agreed to buy back the home it had constructed for Debtor and to provide Debtor up to $70,000 of financing to refinance the existing home equity loan held by HomeEq on the Hidden Rose Property (ECF No. 16) (Exhibit 5). A month later, New Leaf informed Debtor that it would be unable to refinance the home equity loan because, under the Texas Finance Code, only the original lender can refinance a home equity loan (ECF No. 16) (Exhibit 9).

More arbitration followed. The arbiter found that the settlement agreement, "although harsh," could be legally performed and ordered New Leaf to provide Debtor with $70,000 to be used to refinance the Hidden Rose Property (ECF No. 16) (Exhibit 10). A cashier's check for $70,000 was then delivered to Debtor's attorney who wired the funds directly from the Debtor's client trust account to HomeEq (ECF No. 16) (Exhibit 14). On April 22, 2010, Debtor executed

2

an unsecured promissory note for $70,000, payable to New Leaf (ECF No. 16) (Exhibit 13). The note states, in pertinent part, "Borrower promises to pay all funds received by this Loan to HomeEq Services to pay off the HomeEq loan . . . encumbering [the Hidden Rose Property] . . . and for no other purpose" (Exhibit 13). HomeEq executed a Release of Lien on June 1, 2010 (ECF No. 16) (Exhibit 15). Debtor then defaulted under the terms of the note and New Leaf obtained a default judgment in state court and an Abstract of Judgment was recorded in the Bexar County Real Property records on June 8, 2011 (ECF No. 16) (Exhibit 20). Debtor filed for chapter 7 bankruptcy on May 16, 2017 (ECF No. 1).

## LEGAL ANALYSIS

Debtor moved to avoid New Leaf's judicial lien as an impairment on exempt property under 11 U.S.C. §§ 522(f) and 506(d) (ECF No. 5). Section 522(f)(1)(A) of the Bankruptcy Code allows a debtor to avoid the fixing of a judicial lien on exempt property while § 506(d) allows the debtor to void such avoided claims. New Leaf argues that it is entitled to step into the shoes of HomeEq through the doctrine of equitable subrogation because New Leaf's loan was used to refinance an existing constitutional home equity loan. Debtor, at the hearing, challenged New Leaf's claim for equitable subrogation because the funds used to pay off HomeEq did not pass directly from New Leaf to HomeEq, but rather, were first deposited in Debtor's client trust account before being wired to HomeEq. (Trial Audio, 10:59:25, July 18, 2017). Debtor further argued that New Leaf is judicially estopped from asserting equitable subrogation in this case because it was not asserted in the Bexar County Court when New Leaf originally obtained a default judgment. (Audio 11:01:30). The Court agrees with New Leaf and finds that equitable subrogation is appropriate in this case.

3

A. **The Doctrine of Equitable Subrogation**

Equitable subrogation "is said to be 'the purest of equities,' and the courts of Texas are said to be particularly hospitable to it." *Interfirst Bank Dallas, N.A. v. U.S. Fidelity and Guar Co.*, 774 S.W.2d 391, 397 (Tex. App.—Dallas 1989, writ denied) (quoting *Yonack v. Interstate Sec. Co.*, 217 F.2d 649, 651 (5th Cir. 1954)). "The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor." *LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 619 (Tex. 2007). "There are two key elements to equitable subrogation: (1) the person whose debt was paid was primarily liable on the debt, and (2) the claimant paid the debt involuntarily." *Bank of Am. v. Babu*, 340 S.W.3d 917, 925 (Tex. App.—Dallas 2011, no pet. h.). When the third party pays in performance of a legal duty, equity will substitute them in place of the existing creditor as a matter of course—no agreement between the parties is required. *See E.Y. Chambers & Co. v. Little*, 21 S.W.2d 17, 22 (Tex. Civ. App.—Eastland 1929, writ denied). Equity must "compel[] the ultimate payment of [the] debt by one who, in justice, equity, and good conscience, ought to pay it." *Id.*

Equitable subrogation exists to protect both lenders and debtors. Courts routinely apply the doctrine not only to prevent unjust enrichment, but also to give homestead owners "the ability to renew, rearrange, and readjust the encumbering obligation to prevent a loss of the homestead through foreclosure." *LaSalle*, 246 S.W.3d at 620. Under Texas's strict homestead laws, without equitable subrogation, lenders would be less inclined to engage in the business of refinancing homes. *Id.*

4

Equitable subrogation has been "repeatedly applied to preserve lien rights on homestead property." *LaSalle*, 246 S.W.3d at 619. Although the Texas Constitution provides strict guidelines concerning home equity loans, "Article XVI, section 50(e) does not abrogate th[e] longstanding common law principle or preclude [a lender's] entitlement to equitable subrogation for the refinance portion of the loan proceeds that were used to extinguish [a] constitutionally permissible [lien]." *Id.* at 620.

Texas courts have a long history of applying equitable subrogation to preserve lien rights on homestead property dating back as early as 1890. *See generally* ***Oury v. Saunders***, 13 S.W. 1030 (Tex. 1890) (granting equitable subrogation of a vendor's lien); ***Texas Land & Loan Co. v. Blalock***, 13 S.W. 12 (Tex. 1890) (granting equitable subrogation to the extent loan paid off prior purchase-money lien). The Texas Supreme Court continues to apply this doctrine today. *See generally* ***LaSalle***, 246 S.W.3d 616 (Tex. 2007) (granting equitable subrogation of a home equity loan on agriculture exempt property); ***Benchmark Bank v. Crowder***, 919 S.W.2d 657 (Tex. 1996) (granting equitable subrogation of a loan used to extinguish a federal tax lien).

In *LaSalle Bank National Association v. White*, the homeowners obtained a home equity loan secured by an agricultural homestead. *LaSalle*, 246 S.W.3d at 617–18. A portion of the proceeds were used to pay off a constitutionally permissible purchase-money lien while the debtor kept the remaining balance or "cash-out portion." *Id.* at 617. The Texas Constitution prohibits the use of an agricultural homestead from being used as security for a home equity loan. TEX. CONST. ART. XVI, § 50(a)(6)(I). The debtor later defaulted on the note and a trial court declared the entire debt invalid because the loan was unconstitutional. *LaSalle*, 246 S.W.3d at 617. The court of appeals affirmed. *Id.* at 618.

5

In overturning the lower court, the Texas Supreme Court stated that "Texas has long recognized a lienholder's common law right to equitable subrogation. The doctrine allows a third party who discharges a lien upon the property of another to step into the original lienholder's shoes and assume the lienholder's right to the security interest against the debtor." *Id.* The court distinguished between the loan amount used to pay off the original purchase-money loan and the cash-out portion; the court only found the bank was equitably subrogated to the extent the home equity loan was used to pay off the previous lien. *Id.* at 620. Any liens related to the cash-out portion were invalid. *Id.* Citing an earlier decision in *Benchmark Bank v. Crowder*, the court "emphasized that, 'once valid, the lien does not become invalid against the homestead simply because the original debt has been refinanced.'" *Id.* (quoting *Benchmark Bank v. Crowder*, 919 S.W.2d at 661). The court found that although the lender's home equity lien must be forfeited under § 50(e) of the Texas Constitution, the lender was still protected because the lender's equitable subrogation claim did not arise from its contract with the debtor, but rather, it arose in equity by discharging an existing constitutionally valid lien. *Id.* at 619. The Court treated the third party lender as if it took formal assignment of the lien that was satisfied.

B. **Applying Equitable Subrogation to the Case at Bar**

The case at bar is similar to *LaSalle* in many respects. Like *LaSalle*, the Debtor received a loan to refinance an existing lien encumbering her homestead. Like *LaSalle*, a third-party lender extended credit that discharged a constitutionally valid lien. Like *LaSalle*, the Debtor is attempting to avoid repayment of the debt. Finally, like *LaSalle*, allowing the Debtor to prevail on this motion would result in unjust enrichment.

6

The HomeEq lien originally encumbering Debtor's homestead was the result of a constitutionally valid home equity loan for which Debtor was primarily liable. *See* **Tex. Const. art. XVI, § 50**; (ECF No. 16) (Exhibit 10). New Leaf did not volunteer to refinance the home equity loan—New Leaf had a legal obligation to do so under the terms of the settlement agreement previously discussed (ECF No. 16) (Exhibit 5). These stipulated facts satisfy the "two key elements to equitable subrogation." *See* ***Babu***, 340 S.W.3d at 925 (listing the two elements of equitable subrogation).

Debtor presented two arguments to the Court at the hearing held on July 18, 2017 as to why equitable subrogation should not apply in this case. First, Debtor argued, based on a theory of tracing, that equitable subrogation should not apply because the cashier's check was not delivered directly from New Leaf to HomeEq, but instead, was first deposited in Debtor's client trust account before being wired by Debtor's attorney to HomeEq. In support of this argument, Debtor stated that there was no requirement that Debtor pay those funds to HomeEq—Debtor simply "chose to pay HomeEq but she could've done anything with that money." (Trial Audio, 10:59:25, July 18, 2017). Debtor cites no case law to support the contention that the funds must pass directly from the new lender to the old lender in order for equitable subrogation to apply and the Court is unwilling to impose that requirement today.

As to Debtor's supporting argument—that Debtor was not required to pay HomeEq but simply chose to do so—the Court finds that the stipulated facts and exhibits directly contradict this claim. Page two of the Promissory Note states in bold and all caps:

> **THIS PROMISSORY NOTE IS MADE TO SATISFY THE TERMS OF THE JUDGMENT RENDERED BY THE HONORABLE JANET LITTLEJOHN ON NOVEMBER 23, 2009 . . .** ***THE USE OF THESE FUNDS FOR ANY OTHER PURPOSE IS EXPRESSLY PROHIBITED***.

(ECF No. 16) (Exhibit 13) (emphasis added). The next paragraph further states:

> Borrower promises to pay all funds received by this Loan to HomeEq Services to pay off the HomeEq Services loan number 0000325068443 encumbering the property at 5931 Hidden Rose within seven calendar days of receipt of such funds, *and for no other purpose*.

(ECF No. 16) (Exhibit 13) (emphasis added). The record also shows that Debtor's attorney in the civil matter then sent a letter to New Leaf confirming payoff of the HomeEq loan on May 4, 2010 (ECF No. 16) (Exhibit 14).

Finally, Debtor argues that New Leaf is now precluded from asserting equitable subrogation because they did not assert it as a basis for recovery in its original petition filed in the state court. (Trial Audio, 11:01:30, July 18, 2017). The Court is not persuaded by this argument either. Judicial estoppel "prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding." **Hall v. GE Plastic Pacific PTE Ltd.**, 327 F.3d 391, 396 (5th Cir. 2003); *see also* **Pleasant Glade Assembly of God v. Schubert**, 264 S.W.3d 1, 6 (Tex. 2008). New Leaf's "earlier proceeding" was a default judgment in which New Leaf simply asserted Debtor owed New Leaf $70,000 pursuant to a promissory note and the Debtor failed to repay it (ECF No. 16) (Exhibit 24). Debtor did not respond and a default judgment was entered (ECF No. 16) (Exhibit 20). The Court does not believe that this constitutes an "inconsistent" position of that previously taken by New Leaf in state court.

When New Leaf refinanced the Hidden Rose property, the "lien [did] not become invalid against the homestead simply because the original debt [had] been refinanced." *See* **LaSalle**, 246 S.W.3d at 620 (quoting **Benchmark**, 919 S.W.2d at 661). Allowing the Debtor to now claim otherwise would operate as a fraud upon New Leaf and result in a windfall for Debtor. *See* **Oury**, 13 S.W. at 1031. As such, the Court finds that New Leaf—under a legal obligation to do so—

8

discharged the constitutional home equity lien encumbering the Hidden Rose Property which now allows them to step into the shoes and assume HomeEq's rights against the Debtor. The entire loan from New Leaf was used to pay off the existing home equity loan, therefore New Leaf is entitled to equitable subrogation of the entire amount of the loan.

### CONCLUSION.

IT IS THEREFORE ORDERED that Debtor's Motion to Avoid Judicial Lien of Creditor (ECF No. 5) is DENIED and OVERRULED.

All other relief not specifically granted herein is DENIED.

###